UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| FUSION CUISINE, Inc. | ) | Case No. 10-00821 |
| | ) | (Chapter 11) |
| Debtor. | ) | |

### OBJECTION TO MOTION FOR RULE 2004 EXAMINATION OF MUSTAFA C. POYRAZ; AND MOTION FOR RELATED RELIEF

Fusion Cuisine, Inc., the Debtor and debtor-in-possession (the "Debtor"), files this Motion to Object to the Motion for Rule 2004 Examination of Mustafa C. Poyraz filed by Nelson Deckelbaum, Esq. and Stephen Nichols, Esq. on behalf of Mr. Gurkan Us (Docket Entries ##61 and 62). As the bases for this Objection, the Debtor states as follows:

1. Mr. Poyraz is the President, and Chairman of the Board of Directors, of the Debtor.

2. Attached hereto, and incorporated herein, as <u>Exhibits "A" and "B"</u> are affidavits, by Messrs. Poyraz and Akin, stating that, on or about July 30, 2010, they each contacted Mr. Deckelbaum, to seek his services to represent the Debtor in filing and handling this Case and, in the course of that conversation, disclosed, to Mr. Deckelbaum, confidential information about the Debtor and about Mr. Poyraz in relation to the Debtor.

3.  On October 27, 2010, Messrs. Deckelbaum and Nichols entered their appearance in this Case on behalf of Messrs. Gurkan Us and Tunc Kivane (Docket Entry #60).

4.  It appears, from an examination of the Debtor's available corporate books and records by the undersigned attorney for the Debtor, that Mr. Us owns 12.5% of the Debtor's corporate stock.

5.  On November 4, 2010, Messrs. Deckelbaum and Nichols filed the subject Motion, and gave the undersigned attorney for the Debtor Notice thereof, to examine Mr. Poyraz, under Bankruptcy R. 2004 (Docket Entries ##61 and 62).

6.  Mr. Deckelbaum also sent the undersigned attorney for the Debtor (a) a notice, on behalf of Mr. Gurkan Us, to examine the books and records of the Debtor, apparently with Mr. Deckelbaum being present; and (b) a notice, on behalf of Mr. Gurkan Us and Mr. Steven Brattain, attempting to call a special stockholders meeting, also apparently with Mr. Deckelbaum being present.

7.  One of the purposes of that meeting, as specified by Messrs. Us and Brattain, is "To define shareholders and consideration given for holdings".

8.  It appears, from an examination of the Debtor's available corporate books and records by the undersigned attorney for the Debtor, that Mr. Steven Brattain owns 12.5% of the Debtor's corporate stock.

9.  In the course of an exchange of e-mails between Mr. Deckelbaum and the undersigned counsel, Mr. Deckelbaum confirmed that his purpose is to make "a careful scrutiny of their [presumably

referring to the members of the Board of Directors of the Debtor, including Mr. Poyraz] activities". (See the last two pages, of an e-mail thread, attached hereto as Exhibit "C".)

10. Such a "scrutiny", whatever it is, by fellow stockholders, may or may not be within the scope of an examination under Bankruptcy R. 2004(b) in this Case with respect to the bankruptcy of the Debtor. The point is that, under the D.C. Rules of Professional Conduct Rule 1.18 (a copy of which is attached hereto as Exhibit "D"), Messrs. Deckelbaum and Nichols are conflicted from representing anyone against the Debtor, its Board of Directors, or just Mr. Poyraz, with respect to the Debtor.

11. Mr. Deckelbaum protests - regarding the length of the disclosures made by Messrs. Poyraz and Alcitepe, Mr. Deckelbaum's understanding of what Mr. Poyraz was saying, the fact that Mr. Deckelbaum was not retained by the Debtor, etc. - are all irrelevant under D.C. Rules of Professional Conduct Rule 1.18. That Rule, by its terms, is a flat bar based solely upon whether the information disclosed is confidential.

12. Mr. Nichols is likewise disqualified under D.C. Rules of Professional Conduct Rule 1.18(c).

13. Mr. Deckelbaum is also disqualified from making similar efforts to get such information - against the Debtor, the Debtor's Board of Directors or Mr. Poyraz - via personally participating in, or orchestrating, an examination of the Debtor's books and records or a stockholders meeting.

14. The Court should rule upon these alternatives sources of information demanded by Mr. Deckelbaum in order to avoid the Debtor's or being left to seek an injunction, per Mr. Deckelbaum's suggestion, if it disagrees with him. The same disqualification rules apply.

WHEREFORE, the Debtor respectfully requests this Court (a) to deny Mr. Us' Motion for a Bankruptcy Rule 2004 examination; (b) to rule that Messrs. Deckelbaum and Nichols are each barred from representing any person or entity in any investigations of, or actions against, the Debtor or any member of its Board of Directors in connection with this Case; (c) to award Debtor its costs and attorneys' fees in connection with the subject Motion, this Objection and Mr. Deckelbaum's other efforts to discover any information to use against the Debtor or its Board of Directors in connection with the subject matter of this Case; (d) to reserve the Debtor's rights and remedies with respect to any disclosures and actions Mr. Deckelbaum or Mr. Nichols has taken to date or hereafter takes; and (e) to award the Debtor such other and further relief as may be just.

Dated: November 18, 2010              Respectfully submitted,

                                     Samuelson Law Offices, LLC


                                     By:   /s/ Kenneth L. Samuelson
                                             Kenneth L. Samuelson
                                          D.C. Bar No. 302455
                                          2020 Pennsylvania Avenue, N.W.
                                          #417
                                          Washington, DC 20006
                                          Tele.: 202-484-0848

Fax: 240-499-8939
ksamuelson@samuelson-law.com

### CERTIFICATE OF SERVICE

I hereby certify that, on this 18 th day of November, 2010, notice of the filing of this Motion, and the accompanying Affidavits and proposed Order being filed herewith, are being sent to the following (a) electronically, via the Court's ECF system in this Case; or (b) via mail, through the U.S. Postal Service, first class postage prepaid:

>Nelson Deckelbaum, Esq.
>Stephen Nichols, Esq.
>Cooter, Mangold, Deckelbaum & Karas, LLP
>5301 Wisconsin Avenue, N.W.
>Suite 500
>Washington, DC 20015

>Martha L. Davis, Esq.
>Office of the U.S. Trustee
>115 South Union Street
>Plaza Level, Suite 210
>Alexandria, VA 22209

/s/ Kenneth L. Samuelson
Kenneth L. Samuelson

EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re )
)
FUSION CUISINE, Inc. ) Case No. 10-00821
) (Chapter 11)
Debtor. )

AFFIDAVIT BY MUSTAFA C. POYRAZ

IN SUPPORT OF OBJECTION TO MOTION FOR RULE 2004 EXAMINATION OF MUSTAFA C. POYRAZ; AND MOTION FOR RELATED RELIEF

I, Mustafa C. Poyraz, declare, under the penalty of perjury, that the following statement is true and correct to the best of my knowledge, information and belief:

On or about July 30, 2010, I called Nelson Deckelbaum, Esq., who was recommended to me as a bankruptcy attorney. I told him that Fusion Cuisine, Inc. ("Fusion"), had filed a Chapter 11 bankruptcy proceeding that was being, or had been, dismissed, that Fusion was looking for a new bankruptcy attorney, the names of the stockholders of Fusion, including Mr. Gurkan Us but not Mr. Steven Brattain, the problems with the Landlord, and the Board of Directors' strategy for resolving that case. He asked me whether I had personal liability on the lease, and I answered that I did. I told him my concerns as to whether I needed to file for bankruptcy protection personally because of the problems with the Debtor. I asked him if he could take the case and what his legal fees would be, since

the fees charged by the Pillsbury law firm were too high for Fusion. The call lasted about five minutes.

Mr. Deckelbaum told me that he was having trouble understanding me. Therefore, I asked attorney Akin Alcitepe to call Mr. Deckelbaum. I ultimately decided not to hire Mr. Deckelbaum because his fees were too high.

Dated: November 17, 2010

Mustafa C. Poyraz

District of Columbia

Subscribed and sworn to before me, in my presence, this 17th day of November, 2010

by _____

Doris Wilkins, Notary Public
My Commission Expires June 14, 2015

DORIS WILKINS
Notary Public, District of Columbia
My Commission Expires June 14, 2015

~~State~~ of ~~District~~ of Columbia
                                        Ss:
County of _____ :

    I HEREBY CERTIFY that, on this _17th_ day of _November_, 20_10_, before me, the subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared in said jurisdiction _Mustafa C. Poyraz_, personally well known to me (or satisfactorily proven) to be the person who signed the foregoing Affidavit bearing date of _November 17_, 20_10_ (the "Affidavit"), and stated before me, under oath, that the matters set forth in that Affidavit are true and accurate to the best of his knowledge, information and belief.

    WITNESS my hand and Notarial seal. _[signature]_
                                    _Doris Wilkins_ (print name)

[Affix Notarial Seal]

**DORIS WILKINS**
Notary Public, District of Columbia
My Commission Expires June 14, 2015

**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
FUSION CUISINE, Inc.            )   Case No.  10-00821
                                )   (Chapter 11)
        Debtor.                 )


AFFIDAVIT BY AKIN ALCITEPE

IN SUPPORT OF OBJECTION TO MOTION FOR RULE 2004 EXAMINATION OF MUSTAFA C. POYRAZ; AND MOTION FOR RELATED RELIEF

I, Akin Alcitepe, declare, under the penalty of perjury, that the following statement is true and correct to the best of my knowledge, information and belief:

> I am an attorney currently employed by the law firm of Howrey LLP, and, in that capacity, have, in the past, represented Fusion Cuisine, Inc. and Mustafa C. Poyraz personally in various matters from time to time.
>
> Unfortunately, the only written notes I have on Nelson Deckelbaum are his name, his phone no. 202-537-0700 and the word "counsel".
>
> My memory, as refreshed by Howrey LLP's telephone logs, as to my conversation with Mr. Deckelbaum is as follows:
>
> In late July, 2010, Mustafa Poyraz called me and said he had been speaking with a bankruptcy attorney (recommended to him by an attorney who has an office upstairs from Morso Restaurant). He added that the bankruptcy attorney was highly recommended, but that Mustafa had trouble

communicating with him as the attorney was an elderly gentleman.

Mustafa asked me to call Deckelbaum and convey to him that Fusion Cuisine, Inc. ("FCI") was looking for a bankruptcy attorney to represent it in Chapter 11 bankruptcy. He also asked me to tell Mr. Deckelbaum about the reasons FCI filed the Chapter 11 proceeding and FCI's strategy for resolving that case. He also wanted me to ask Deckelbaum about his hourly rate as he did not want to pay anywhere close to what Pillsbury had been charging FCI (which he said was in the $550/hr. range).

I had about a three-minute call with Mr. Deckelbaum. He remembered speaking with Mustafa, but told me he had trouble communicating with him because of Mustafa's accent. I told him I represented FCI in the Landlord and Tenant matter filed against it by the landlord in D.C. Superior Court and briefly communicated the reason for FCI's filing of a Chapter 11 proceeding and FCI's strategy for resolving that proceeding, as had been communicated to me by Mustafa. I also asked Mr. Deckelbaum about his rate and he said it was more than that of Pillsbury. We ended the conversation there.

I told Mustafa about Deckelbaum's rate and he said FCI could not afford him and would retain other counsel.

Dated: November 5th, 2010

Akin Alcitepe

State of _DISTRICT_    :
                       Ss:
County of _OF COLUMBIA_ :

  I HEREBY CERTIFY that, on this _15th_ day of _November_, 20_10_, before me, the subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared in said jurisdiction _Akin Alcitepe_, personally well known to me (or satisfactorily proven) to be the person who signed the foregoing Affidavit bearing date of _November 15th_, 20_10_ (the "Affidavit"), and stated before me, under oath, that the matters set forth in that Affidavit are true and accurate to the best of his knowledge, information and belief.

  WITNESS my hand and Notarial seal.

_____/s/ Patricia P. Morris_____

_PATRICIA P. MORRIS_ (print name)


[Affix Notarial Seal]


My Commission Expires: _4/14/2014_

| | |
|---|---|
| From: | Ken Samuelson [ksamuelson@samuelson-law.com] |
| Sent: | Wednesday, November 10, 2010 12:03 PM |
| To: | 'Nelson Deckelbaum' |
| Cc: | 'Alcitepe, Akin'; mcpyrz@yahoo.com; giorgio@morsorestaurant.com; ksamuelson@samuels |
| Subject: | RE: Your E-mail of 10/29/10 |

EXHIBIT "C"

Nelson -

Please see me responses, in ALL CAPS and brackets, below.

Ken


Kenneth L. Samuelson, Esq.
ksamuelson@samuelson-law.com

Samuelson Law Offices, LLC
2020 Pennsylvania Avenue, N.W.
#417
Washington, DC 20006
Telephones: 202-494-0848 and 877-800-8739
Fax: 240-499-8939
www.samuelson-law.com
Blog: http://www.commercialrealestatelawyerblog.com

---

1. This e-mail may contain confidential or privileged information or attorney work-product. Any error in connection with this transmission is inadvertent and not a waiver of any applicable privilege or protection. If the context of this e-mail indicates that it was not intended to be sent to you, then you may not use or distribute this e-mail. Please notify the sender, and destroy and delete all copies, immediately.

2. If an agreement or opinion is attached to this e-mail, this transmittal is not a signature or authentication thereof, unless otherwise specifically stated herein.

3. Treasury Department Circular 230 Disclosure: To ensure compliance with requirements imposed by the U.S. Treasury Department, we inform you that any U.S. federal tax advice contained in the e-mail (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing or recommending, to another party, and transaction or matter addressed in this e-mail or any attachment.

4. Nothing contained herein is intended to create an attorney/client relationship with this firm. Such a relationship may be created only by a mutually agreed upon, signed and delivered formal engagement agreement expressly designated as such.

---

**From:** Nelson Deckelbaum [mailto:ndeckelbaum@cootermangold.com]
**Sent:** Wednesday, November 10, 2010 11:28 AM
**To:** ksamuelson@samuelson-law.com
**Subject:** RE: Your E-mail of 10/29/10

Ken—I do n ot agree with your statement. You did ask me to put the meeting off-because Pablo could not appear—in addition to your baseless allegations of conflict.

[I STAND BY MY PREVIOUS E-MAIL.  BECAUSE OF THE FOREGOING, ALL FUTURE COMMUNICATIONS
NEED TO BE IN WRITING, EXCEPT FOR EMERGENCIES.]

FYI the shareholder did appear this am in my office.

1

[DURING THE SUBJECT TELEPHONE CALL, YOU TOLD ME THAT THE MEETING WOULD NOT BE HELD; AND YOU SENT ME AN E-MAIL TO THAT EFFECT YESTERDAY AFTERNOON.]

You had also agreed to furnish me with the phone number and name of the person who was in charge of the corporate records (I do hope you have not forgotten) and I still await that information.

[SEE MY PREVIOUS E-MAIL - AFTER THAT, YOU TOLD ME THAT YOU WANT TO ATTEND. AGAIN, I SHALL NOT FACILITATE A POSSIBLE CONFLICT OF INTEREST, I SHALL FACILITATE AN UN-CONFLICTED AUTHORIZED REVIEW BY YOUR CLIENTS, AND YOU PERSONALLY MAY NOT COMMUNICATE WITH MUSTAFA. IF YOU AND YOUR CLIENTS WANT TO PROCEED ON THAT BASIS, PLEASE SEND ME A LIST OF SOME ALTERNATIVE DATES AND TIMES AS TO WHEN THEY WOULD LIKE TO SCHEDULE SUCH A REVIEW.]

The conflict issue will be resolved as it is clear that no conflict exists and that you and/or your clients are desperately attempting to avoid a careful scrutiny of their activities.

[YOU CAN MAKE WHATEVER ACCUSATIONS YOU WANT IN COURT. HOWEVER, I HAVE RESERVED, AND DON'T NEED TO KEEP DOING SO IN ORDER TO PRESERVE, ALL OF THE DEBTORS' AND THE STOCKHOLDERS', AND MY OWN, RIGHTS AND REMEDIES, FOR ACCUSATIONS AND THREATS HERETOFORE, NOW OR HEREAFTER MADE.]

Nelson Deckelbaum
Cooter, Mangold, Deckelbaum & Karas, L.L.P.
5301 Wisconsin Ave. NW, Suite 500
Washington, D.C. 20015
Sender's Telephone: (202) 537-0700
Sender's Fax Number: (202) 364-3664

---

**From:** Ken Samuelson [mailto:ksamuelson@samuelson-law.com]
**Sent:** Wednesday, November 10, 2010 11:15 AM
**To:** Nelson Deckelbaum
**Cc:** 'Alcitepe, Akin'; mcpyrz@yahoo.com; giorgio@morsorestaurant.com; ksamuelson@samuelson-law.com
**Subject:** RE: Your E-mail of 10/29/10

Hello, Nelson -

In response to your below, let me clarify as follows:

(a) I didn't ask you to continue the meeting. I told you that it should not be held because of Pablo's illness. However, I also told you that it should not be held until the issue of your conflict of interest is resolved. Your clients do not have the right to continue a meeting that was never held, to dictate a date and time, or even to change the place. Your clients were not "present at a duly organized meeting" as required D.C. Code Section 29-101.31 as a prerequisite for a continuance.

(b) You indicated that you personally want to be present to review the books and records of the Corporation. While, ordinarily, the books and records are open to stockholders, I don't see how you can be involved before your conflicts of interest issue is resolved. Per your request, I'll be glad to arrange a schedule for your clients to review the books and records of the Corporation, but only for an authorized review.

(c) Because of the conflicts issue and the fact that you indicated to me, in your earlier telephone calls, that your clients intend to asset claims against the Debtor and/or other stockholders, all communications between you and Mustafa should be through me.

2

Search - 1 Result - Rule 1.18. Duties to prospective client. Page 1 of 2

Case 10-00821  Doc 64  Filed 11/18/10  Entered 11/18/10 20:35:48  Desc Main
Document  Page 14 of 17

LexisNexis® Total Research System

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional A

FOCUS™ Terms _____ Search Within Original Results (1 - 1)  • Go→  Adv

EXHIBIT "D"

Source: District of Columbia > Find Statutes, Regulations, Administrative Materials & Court Rules > DC - District of Colum Combined
TOC: District of Columbia Code Annotated, Court Rules & ALS, Combined > /.../ > APPENDIX A. RULES OF PROFESSIONAL CONDUCT > Rule 1.18. Duties to prospective client.

*D.C. Bar Appx. A, Rule 1.18*

DISTRICT OF COLUMBIA COURT RULES ANNOTATED
Copyright (c) 2010 by Matthew BenderBender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS CHANGES RECEIVED FOR STATE \*\*\*
\*\*\* AND FOR FEDERAL RULES THROUGH 7/23/2010 \*\*\*
\*\*\* Annotations are current through decisions posted as of 5/13/2010 \*\*\*

DISTRICT OF COLUMBIA BAR RULES
APPENDIX A. RULES OF PROFESSIONAL CONDUCT

D.C. Bar Appx. A, Rule 1.18 (2010)

Review Court Orders which may amend this Rule.

Rule 1.18. Duties to prospective client.

(a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as permitted by Rule 1.6.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received a confidence or secret from the prospective client, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received a confidence or secret from the prospective client, representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, or

(2) the disqualified lawyer is timely screened from any participation in the matter.

**NOTES:** Comment to 2007 Revision.

COMMENT.

[1] Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. The principle of loyalty diminishes in importance if the sole reason for an individual lawyer's disqualification is the lawyer's initial consultation with a prospective new client with whom no client-lawyer relationship was ever formed, either because the lawyer detected a conflict of interest as a result of an initial consultation, or for some other reason (e.g., the prospective client decided not to retain the firm). Hence, prospective clients should receive some but not all of the protection afforded clients.

[2] Not all persons who communicate information to a lawyer are entitled to protection under this rule. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a clientlawyer relationship, is not a "prospective client" within the meaning of paragraph (a).

[3] It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The client may disclose such information as part of the process of determining whether the client wishes to form a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Such information is generally protected by Rule 1.6, even if the client or lawyer decides not to proceed with the representation. See Rule 1.6, Comment [9]. Paragraph (b) of Rule 1.18 prohibits the lawyer from using or revealing that information, except as permitted by Rule 1.6. The duty to protect confidences and secrets exists regardless of how brief the initial conference may be. The prohibition

Search - 1 Result - Rule 1.18. Duties to prospective client.

Case 10-00821    Doc 64    Filed 11/18/10    Entered 11/18/10 20:35:48    Desc Main
Document      Page 15 of 17

Page 2 of 2

against use or disclosure of information received from the prospective client may in turn cause the individual lawyer to be disqualified pursuant to Rule 1.7(b)(4) from representing a current or future client of the firm adverse to the prospective client because that lawyer's inability to use or disclose information from the prospective client may adversely affect that lawyer's professional judgment on behalf of the current or future client of the firm whose interests are adverse to the interests of the prospective client.

[4] In order to avoid acquiring confidences and secrets from a prospective client, a lawyer considering whether or not to undertake a new matter may limit the initial interview only to information that does not constitute a confidence or secret, if the lawyer can do so and still determine whether a conflict of interest or other reason for non-representation exists. An individual lawyer of the firm who obtains information from a prospective client is permitted by Rule 1.6(a) to disclose that information to other persons in the lawyer's firm, but any such dissemination may cause additional individual lawyers of the firm to be personally disqualified. If a firm wishes to keep open the screening option under paragraph (d)(2) which permits lawyers who are not personally disqualified to represent clients in the same or substantially related matters, the firm must limit and control dissemination of information obtained from the prospective client. Where the information from the prospective client indicates that any reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under Rule 1.7, then informed consent from all affected present or former clients must be obtained before accepting the representation.

[5] A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. For the definition of "informed consent," see Rule 1.0(e). If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.

[6] Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received confidences and secrets from the prospective client. ABA Model Rule 1.18 provides for personal disqualification only if the information received by the lawyer could be significantly harmful if used in the matter, but the trigger in D.C. Rule 1.18 is receipt of any confidence or secret because of the interest in more broadly protecting the prospective client and the difficulty of determining whether use of the information would be significantly harmful to the prospective client.

[7] Under paragraph (c), the prohibition in this rule is imputed to other lawyers as provided in Rule 1.10, but, under paragraph (d)(1), imputation may be avoided if the lawyer obtains the informed consent of both the prospective and affected clients. In the alternative, imputation may be avoided under paragraph (d)(2) if all disqualified lawyers are timely screened. See Rule 1.0(l) (requirements for screening procedures). When a firm may wish to rely on paragraph (d)(2) to avoid imputed disqualification of the firm as a whole, it should take affirmative steps -- as soon as an actual or potential conflict is suspected -- to prevent a personally disqualified lawyer from disseminating any information about the potential client that is protected by Rule 1.6, except as necessary to investigate potential conflicts of interest, to any other person in the firm, including non-lawyer staff. Any lawyer in the firm who actually receives, directly or indirectly, protected information provided by a prospective client is disqualified. Unlike ABA Model Rule 1.18, this rule does not condition use of screening on the taking of reasonable measures by the personally disqualified lawyer to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; that is because the screen protects the prospective client regardless of the amount of information received by the personally disqualified lawyer, and this standard may be difficult to apply in practice. This rule does not prohibit the screened lawyer from receiving any part of the fee, in contrast to ABA Model Rule 1.18, because the substantial administrative burden of complying with such a prohibition exceeds any marginal benefit.

[8] This rule, unlike ABA Model Rule 1.18, does not require notice to the prospective client that lawyers in the firm who are not personally disqualified are representing a client adverse to the prospective client in the same or substantially related matters subject to the screening requirement, because the lack of such a notice requirement under the prior D.C. Rule concerning prospective clients (Rule 1.10(a)) did not prove problematic and it is not clear that the notice requirement materially advances any significant interest of the prospective client.

[9] For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, see Rule 1.1. For a lawyer's duties when a prospective client entrusts valuables or papers to the lawyer's care, see Rule 1.15.

USER NOTE: For more generally applicable notes, see notes under the first section of this group or subgroup.

Source: District of Columbia > Find Statutes, Regulations, Administrative Materials & Court Rules > DC - District of Columbia Code Annotated, Court Rules & ALS, Combined
TOC: District of Columbia Code Annotated, Court Rules & ALS, Combined > /.../ > APPENDIX A. RULES OF PROFESSIONAL CONDUCT > Rule 1.18. Duties to prospective client.
View: Full
Date/Time: Thursday, November 18, 2010 - 7:02 PM EST

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2010 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| FUSION CUISINE, Inc. | ) | Case No. 10-00821 |
| | ) | (Chapter 11) |
| Debtor. | ) | |

## ORDER SUSTAINING OBJECTION TO RULE 2004 EXAMINATION OF MUSTAFA C. POYRAZ

Upon consideration of the Objection to Motion for Rule 2004 Examination of Mustafa C. Poyraz and the Affidavits filed therewith, it is

ORDERED that the Motion for Rule 2004 Examination of Mustafa C. Poyraz filed by Gurkan Us (Docket Entries ##61 and 62) be, and the same hereby are, DENIED; and it is further

ORDERED that the attorneys now of record for Mr. Us be, and are hereby, disqualified from representing any person or entity in any

investigations of, or actions against, the Debtor or any member of its Board of Directors in connection with the subject matter of this Case; and it is further

ORDERED that the Debtor be, and is hereby, awarded its costs and attorneys' fees in connection with the subject Motion, this Objection and Mr. Us' other efforts to discover any information to use against the Debtor or its Board of Directors in connection with the subject matter of this Case; and it is further

ORDERED that the Debtor retains all of its rights and remedies with respect to any disclosures and actions Mr. Us' attorneys now of record have taken to date or may hereafter take with respect to this Case or any of the subject matter of this Case, as said rights and remedies may be determined by further Order of this Court.


Cc:  All persons and entities entitled to notice under the Court's ECF list for this case

END OF ORDER